5-15-0-6-6. When you are all ready, take your time. Good afternoon. May it please the Court, Counsel. My name is Alexander Munches. I'm with the Office of the State Appellate Defender. I represent Mr. Richard Nelson. Now, Mr. Nelson appeals from his convictions following a jury trial. The focus of this appeal is his home invasion conviction. Now, it's undisputed that Mr. Nelson beat up a heroin dealer in a motel room. However, the two issues on appeal are whether or not the State sufficiently proved that this motel room, that is, the place where the heroin dealer was selling, whether or not this heroin dealer actually resided there, and then alternatively, whether or not the evidence on this issue was close. Was there testimony that the heroin dealer was there for a period of three days and had all of his essential belongings in the room with him? Sure. The testimony was that this heroin dealer, his sole purpose for being in town was to sell heroin. And that he brought a, what seemed to be, there was no testimony on this. I think there's just photos. He brought a bag with him. And that bag included hundreds of dollars worth of heroin and hundreds of dollars of cash. He also testified that he had no prior contact with the area. He didn't know anybody in the area, and he didn't plan to stay very long. There's also no testimony from him that he even paid for the room. The study described the room as being paid up. And I think, really importantly, all the heroin sales that occurred over the course of this time that he was in southern Illinois occurred in the room. Now, of course, there was some indication that, you know, he was sleeping, that he watched some TV, that he talked on the phone with family members. But I think what's especially critical about that testimony is that he didn't seek privacy to do that. These are just activities that he snuck in in between sales. Because, again, he agreed that his sole purpose was to be in the motel room. And I think, as a fair reading of the Home Invasion Statute suggests, it doesn't protect the sanctity of heroin dealing. He wasn't – so his testimony with regard to being in the room, making phone calls, and periodically sleeping in between sales, how do you argue that it was about – because he didn't intend to have privacy during that time? Sure, he was asking – So that anyone could walk in during those periods of time, right? Sure. So he was down there for the sole purpose of selling heroin, that is, to invite heroin addicts, possibly agitated, complete strangers to him, into his room to buy heroin. He's not down in town seeking repose or quiet or calm. He's there on business. But I mean, he could have something that's more of a legitimate business and still have a residence or a dwelling. We certainly don't suggest that a home invasion conviction of a heroin dealer can never happen in a motel room. But I think if you think about it in the context of People v. Burnley, which I think Justice Welch penned and you might have also signed on to, that sort of situation would be – imagine sort of like a working poor person who's recently been evicted, and she's taken her wayward teenage son into the motel room. They just showed up, and her teenage son has invited someone in to buy heroin. I think in a case like that, what you have is people actually residing with the wayward teenager, disrupting repose, disrupting the home life. In this situation, what you instead have is a heroin dealer driving down from Chicago into southern Illinois, inviting complete strangers into the place to buy heroin at any hour, for the short time he's actually in southern Illinois. What's the difference between him being in the home that he owns and inviting people in to transact legal or illegal business in the motel room? I think that as soon as you have sort of the home that he owns, you sort of assume the answer that you're looking for, which is namely, it's undisputed at that point that he actually resides in his own home. Here you have someone with zero prior contacts with the area, with the actual place itself. Doesn't that argument make that even more susceptible that this was intended as his temporary dwelling place? If he doesn't know anyone else in the area and he has no other place to go, that he was renting his room as an office and he was going to stay with relatives, he was going to stay in his room and conduct business outside of it. So again, at trial he agreed that his sole purpose was to be there to sell heroin. He didn't even say that he himself paid for the room. He said he was just there. And as someone there who's selling heroin on behalf of someone else, he will probably fall asleep, but people fall asleep in their offices. People make phone calls in public bars. This is not the sort of activity that this home invasion statute is designed to protect. And you would agree, though, that if an individual were sitting in the back table of a bar selling heroin and fell asleep, that's a much different argument that that bar table or that portion of the bar, which is a dwelling place or room for the evening, as opposed to a hotel, which its main purpose is to give someone a room to stay in. Well, I think importantly, and I think the parties agree about this, it's not the nature of the structure alone. You have to look at actual use. And when you have a witness on the stand, a heroin dealer saying, my sole purpose, agreeing that my sole purpose was to be in there to sell drugs, it's quite a different case. You know, I read the case of People v. Bow. And in that case, that was in some ways more tenuous scene in that the victim was staying at the defendant's house, I believe. Yeah, my understanding of Bow was that the appellate court was really sort of reading it in the context of subsection D of the home invasion statute. And in that subsection, that tells the state you can't charge a defendant with home invasion if they have a tenancy interest and a possessory interest in the home at issue. And I think that the legislature must have made that to card out certain domestic situations. And in that case, the defendant had hired gunmen to come into his own home, you know, indisputably his home, in order to attack his, I think his nephew, who had a competing drug business. And the appellate court in that situation, I think, sensibly drew a line on subsection D and said, no, defendant, you don't get to hire gunmen, send them into your own home where your uncle or where your nephew is and attack them and then say, hey, state, you can't charge me with home invasion. So I think that was a sensible read on the appellate court's part. But I do think that sort of if we put Bow on, you know, one end of the spectrum where it's undisputed that this guy gets his home and he can't avail himself of subsection D, and on the other end of the spectrum we have, say, Roberts, where it's just a vacant house on the open market, and in the middle of the spectrum we have this court's decision in Burnley where someone is moving, and I think Justice Walsh sensibly said, home invasion will definitely protect someone who has two residences who's in, you know, the sort of course of moving. I thought it was just kind of a temporary or very rarely in Burnley went to that second residence. I didn't know that there was any – you thought that the defendant was moving there permanently? No, I think that the – it wasn't the defendant. Yes, the victim was – it sounded like the victim was in the course of moving. She kept furniture there. She had utilities on. She visited with some sort of frequency. And, you know, in the context it seemed like she was moving. I think it might have been out of a cahokia home, but yes. But I think that the court sensibly read the statute to protect the situation where someone is moving between places, moving between what is undisputably my former home to my new home, as opposed to this case where you have someone who has zero contacts, doesn't plan to be there very long, and only wants to sell heroin out of a motel space. That's quite unlike, I think, Burnley. You know, simply put, home invasion does not create or protect the sanctity of heroin dealing. The state put on a Chicago drug dealer with no connection to the area whose sole stated purpose for driving into Southern Illinois is to sell heroin to complete strangers for a day or so before leaving. So we argue that there was insufficient evidence that this was a dwelling place and that, as a remedy, this case should be remanded for resentencing on, I think, the aggravated battery in particular. As a second issue, we raised – Would your analysis be different if the defendant broke into, walked into a motel room where an individual was there sleeping and was there to sleep before they got up the next morning and kept driving to some other area? Would that be then home invasion? I think in that situation the state could fairly charge home invasion. I think there you have someone who says, My sole purpose is to be in a motel room to sell heroin. I incidentally fell asleep, talked on the phone, but I was just there to sell heroin. That he's not intending to actually reside. There's no evidence he's actually residing. He's simply using the space as a cover so the police won't catch him. If anything, it sort of subverts – If anything, this sort of activity subverts the safety of the motel at large. And I think that, properly, it could be considered a burglary. Not a residential burglary because in burglary you see we're talking about dwelling place, not dwelling. But this case doesn't quite fit home invasion. It's a bad fit. It could be an aggravated battery burglary. Home invasion, no. So the second issue is a Rule 431B violation. The parties agree that the trial court failed to properly admonish the prospective jurors. The issue then on appeal is, will this court entertain the error under plain error? We argue in the alternative that this court finds sufficient evidence that this was a dwelling place and nonetheless find that the evidence was close. Again, the agreed sole purpose was using this space as a convenience store for drug users and this sort of incidental activity may make that question close. Thank you. Thank you. May it please the Court, Counsel, Chelsea Casten on behalf of the State. Your Honors, one of the most significant things to consider in this case is why statutes like home invasion exist. And it's to avoid the greater danger and potential for serious harm in a home as opposed to a business. Short of death, the injuries in this case don't get any more serious. The trial court actually commented that the sentencing for defendant on the nature of the injury sustained being some of the worst that he had ever seen. Indeed, Your Honors, the injuries were so severe that a police officer had to drive the ambulance so that both medics were able to tend to the victim in this case, but he ultimately had to be flown to St. Louis University Hospital and he stayed there for a month due to the severity of the injuries that he sustained. The victim's motel room was a dwelling under the home invasion statute. The definition of a dwelling is a building or portion thereof, a tent, or other enclosed space which is used or intended for use as a human habitation, home, or residence. In considering whether or not something qualifies as a dwelling, Your Honors, or was intended for the use as a dwelling, circumstantial evidence is sufficient proof to prove an inference of knowledge that it was a dwelling. Different things that can be considered can include the time of the day of the injury. This court has considered personal items that were inside of the dwelling to determine if it was or was not in fact a dwelling. Was there a bed, a dresser, a TV, utilities? Were the doors locked or was it open for the public to just come on in? In this case, Your Honors, the defendant entered very late in the evening. The motel room was a standard setup for a motel room. There was a bed, there was a dresser, there was a TV. There was a chair and an ottoman where the victim's duffel bag and clothing had been thrown, and you could see it in one of the photographs. During his testimony, the victim did sell drugs during the day to two individuals, but that evening he testified that he had watched television. He spoke with his children on the phone, and then he went to bed. That was the last thing he remembered. When he woke up, he was in the hospital and had life-altering injuries. For the rest of his life, he's going to suffer physically and mentally from the beating that he took. And all of these facts, Your Honors, go to demonstrate that this was in fact a dwelling. In pointing to these facts, yes, you can talk to your phone on a sidewalk or you can fall asleep at a bar, but those aren't circumstantial facts that can go towards evidence of this being a dwelling or a place that was intended to be a dwelling. There's no law that says that engaging in an illegal activity takes away from the sanctity of the home or the protection that the victim thought he still had in this case. When he went to sleep, he didn't know that he was going to be attacked. What's more, Your Honors, the defendant in this case was less interested in the drugs. He was way more interested in the money. That is what he was seeing holding in his hands after the fact. That's what he and his co-defendant commented on taking when they were covered in the victim's blood in the car riding back to the apartment. So it is significantly less about the drugs, Your Honor, and it was way more about the money in this case. I'm trying to understand what relevance that has. Your Honor, in saying that because he had drugs in the motel room that it somehow took away the category of it being a dwelling. Well, he was a drug dealer, so obviously the whole intent was to get a lot of money, I would think. Your Honor, he was also a drug addict, so who knows exactly what the intent was behind it. The whole point, Your Honor, is that it doesn't matter that he was selling the drugs from the hotel room. That doesn't take away the qualification that it was a dwelling. In addition, Your Honor, whatever the victim was doing in the room, he used it as a dwelling while he did it. The statute does not exclude dwellings when drugs are sold, anywhere that it excludes homes that are also a home-based daycare center or a craft shop or an online store. There's no distinction under the statute that says that that category of it being a dwelling is taken away. And that's for a reason, because the state of Illinois takes a strong position on the sanctity of the home, specifically to try and avoid situations like this where someone has been so severely injured. For the evidence, any rational jury could have found that the room was the victim's dwelling under the home invasion statute. The room was intended for use as a human habitation, a standard hotel room, complete with all that you would think is going to be in a standard hotel room. And it was all seen in photographs taken by the police following the attack on the victim. The activities he engaged in in the motel room were clear from his testimony, as well as from the physical evidence that was taken. Alternatively, from this evidence, a rational jury could have found the room was the victim's dwelling because he used it for the purpose of human habitation. He had actually checked in the day before the attack. He had already spent one night there. Obviously, he was taken to the hospital, so we can't say how long he would have been there because he was taken to the hospital. He engaged in activities that one would expect you to engage in in dwelling. Hang out, watch TV, talk to your family, take a nap. It was also seen in the photographs, Your Honor, that he was shirtless and in a comfortable pair of pants, something you would expect someone to be wearing when they were asleep in their dwelling. And for those reasons, Your Honor, we argue that the victim's motel room was a dwelling under the home invasion statute. Very briefly addressing the second issue of whether or not this case was closely balanced, Your Honors, people versus SEBI has been mentioned quite frequently since it came out. This is not a case that is anything like SEBI. In SEBI, you had a testimony where he said he said, in this case, the state presented an overwhelming amount of evidence with multiple witnesses, multiple exhibits, and physical evidence all to support the fact that this attack happened, this was a dwelling. They were able to show both the premeditation, the actual crime, and the resulting injury that occurred. And for those reasons, we argue that this is not a closely balanced case. And while the court did not perfectly ask the jury whether they understood and accepted the four principles, they did reference all four principles in some form. There wasn't an objection at trial to the 431B principles, and the evidence just does not stack up as being closely balanced in this case. And for those reasons, we would ask you to affirm the ruling of the lower court unless you have any questions. Thank you. Just briefly, the state began by focusing this court on the heroin dealers' injuries. This is not a case about whether or not those injuries were serious. This is not a case about whether or not Mr. Nelson committed a crime. They were serious injuries, and he did commit a crime. We already appreciate that, but that's really not relevant. Don't waste your time. Sure, sure. Yeah, just clear the brush. I appreciate that. The issue in this case is whether or not this was a dwelling place, not whether or not it was a dwelling. And dwelling place requires proof of actually residing. The state put on the drug dealer who said that his sole purpose was to sell heroin at any hour to complete strangers in southern Illinois. No prior contacts with the area, no prior contacts with the motel room. Simply put, the home invasion statute was not created to protect the sanctity of heroin dealing. It's created to protect the sanctity of the home. This person, this drug dealer, did not meet that. The second point, to be brief, regarding SEBI. SEBI doesn't require that all the elements of the offense were closely balanced. Let me stop you for one second before you get to that aspect of the case. Sure. Assume for a moment that the drug deals were taking place in Chicago and he was in his home. Same scenario other than that. Is that home invasion? Sure. Sorry, who's the hit? Him? The victim. The victim. Okay, and then the defendant shows up. The second drug dealer. Yeah. But he's in his home in Chicago. Yeah, I think if he's in his home, indisputably it's his home, it's easy to prove home invasion in that situation. And the public policy behind making that distinction is what in your mind? Under Burnley, protecting the sanctity of the home where people repose, where they seek privacy. Well, wouldn't that typically describe a motel room? Yes, in this case, yes. I think that most, the vast majority of people. But how does that drug dealer then not take his private residence out of that category as well? So I think that when you use the motel room and your sole purpose is to sell drugs, then what you're doing is you're creating a front so the cops don't know to show up. And you're not actually seeking privacy. In fact, by word of mouth, you're telling any heroin dealer or heroin user to come by, a complete stranger, agitated, come on in, I have bags of heroin and lots of cash. Would it be the same if he were, say, the prostitute and he was staying in, that was where he lived, and that's where he turned tricks, was in that room? Well, if he lived there, that would be quite different. So imagine working for a prostitute. So on the weekends, that's where the prostitute lives, turns tricks in the same room, but she's there or he's there, Friday, Saturday, Sunday night. Yeah, I think it sounds like in that sort of situation, there might be some evidence of sort of like a recurring existence and maybe even, but to me, it sounds more like a business operation. It sounds like this is where I work on the weekends, I keep my business out of my home. Imagine a different situation where this guy rented two motel rooms, one for repose, privacy, sanctity, and the second room where all the users show up. I think in that situation, if the beating occurred in that first room where he seeks privacy or repose, yes, you have the home invasion conviction. Where you have the person saying, no, showed up here, my sole purpose is to sell heroin in this room at any hour to complete strangers, agitated, addicts? Home invasion is not the statute they were looking for in that situation. Please move on to your next argument. This is much briefer. This is the SEBI point. SEBI doesn't require that the evidence be close on every single element. If the evidence is close on one element, that's when plain air and SEBI kick in. So we agree injuries were serious. We agree some other of these elements were met. The dwelling place, the evidence elevation was close. So I think the incidental behavior, watch TV, talk to family, wear comfortable pants, although I'm not really sure because I don't know what drug dealers wear normally. But I think those are some of the facts that lean toward, you know, that's why I became arguable. But I think ultimately, if you look at that myopically, you ignore the fact that he said, I'm only here to sell heroin, and I'm doing this for a short period of time, and I'm bringing complete strangers into what would otherwise be private space. It doesn't become close anymore. It's just insufficient evidence of that element. What is private space unless he had someone in to sell drugs? I mean, if he locks the door and keeps people out. So he's a very bad heroin dealer. So yeah, he shows up, and he intended we're not to work, and nobody came in. I think the state would have a better argument in that situation. But once you have people actually coming in, and the heroin dealer is successful, when he says my sole purpose is to sell heroin, you take him at his word. So if in the remedy for Issue 2, of course, is a new trial, the remedy for Issue 1 is resentencing on the aggravated battery conviction. Thank you. Court will take it under advisement. If you're willing, of course.